1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8  UNITED STATES OF AMERICA

9        Plaintiff,

10        v.                              CIV-S-05-1693 DFL GGH

11                                         MEMORANDUM OF OPINION
   CITY AND COUNTY OF SAN                       AND ORDER
12  FRANCISCO, HETCH HETCHY WATER
   AND POWER,
13
14        Defendant.

15

16        Defendant City and County of San Francisco, Hetch Hetchy

17  Water and Power ("San Francisco") moves to dismiss the first

18  amended complaint ("FAC") of plaintiff the United States ("United

19  States").  For the reasons stated below, the court: (1) GRANTS

20  San Francisco's motion to dismiss the United States' fourth

21  claim; (2) GRANTS San Francisco's motion to dismiss the United

22  States' fifth and seventh claims; (3) GRANTS San Francisco's

23  motion to dismiss the United States' eighth claim; and (4) DENIES

24  San Francisco's motion to dismiss the United States' first,

25  second, third, and sixth claims.

26                                I.

The United States alleges the following facts in the complaint:

On August 23, 1999, a fire, which came to be known as the "Pilot Fire," started on private land and spread to the Stanislaus National Forest (FAC ¶ 6.)  The fire started when a tree hit a power line owned and operated by San Francisco.  (<u>Id.</u> ¶ 6.  The Pilot Fire eventually burned 4,028 acres of National Forest land.  (<u>Id.</u> ¶ 9.))  According to the complaint, San Francisco was negligent in not maintaining the area around its power lines.  (<u>Id.</u> ¶ 7.)  On February 18, 2000, the United States submitted a claim to San Francisco for the cost of fighting the fire and damages.  (<u>Id.</u> ¶ 10.)  San Francisco has not paid any part of the claim.  (<u>Id.</u>)

On August 22, 2005, the United States brought this suit.  On October 18, 2005, it filed an amended complaint.  The United States raises eight claims against San Francisco: (1) a state law claim for negligence; (2) violation of California Civil Code § 1714(a); (3) damages under California Health and Safety Code §§ 13007, 13009 and 13009.1; (4) violation of the Raker Act of 1913, Pub. L. No. 63-14, 38 Stat. 242 § 4; (5) violation of 43 U.S.C. §§ 1733(g) and 1765; (6) violation of 16 U.S.C. § 551, 36 Code of Fed. Regs. § 261.1(b), and 18 U.S.C. § 1856; (7) violation of 43 U.S.C. §§ 1733(g) and 1765; and (8) breach of obligations under federal common law.

II.

A. Claim Four (Raker Act)

San Francisco argues that the United States' fourth claim based upon the Raker Act should be dismissed because the Pilot Fire was an accidental fire that originated on private land whereas the Raker Act only covers conduct by San Francisco on the Stanislaus National Forest ("Forest") and Yosemite National Park ("Park"). (Reply at 5-6.)  The United States takes the position that by its terms the Raker Act covers any activity by San Francisco -- wheresoever that activity occurs -- that results in damage to timber in the Forest or Park. (Sur-Reply at 6-7.) However, this argument is not convincing in light of the actual text of the Raker Act.

The introduction to section four of the statute is directed to conduct on public lands: "the said grantee shall conform to all regulations adopted and prescribed by the Secretary . . . governing the Yosemite National Park . . . [and] the Stanislaus National Forest."  Pub. L. No. 63-14, 38 Stat. 242 § 4.  The statute then establishes when San Francisco is liable for activities in the Forest or Park: "[San Francisco] shall not take, cut, or destroy any timber within the Yosemite National Park or the Stanislaus National Forest, except such as may be actually necessary in order to construct, repair, and operate its said reservoirs . . . ."  Id.  Again the language addresses activities on public lands.

The last part of section four is also directed to conduct occurring in the Forest and Park: "[San Francisco] shall pay to the United States the full value of all timber and wood cut,

injured, or destroyed on or adjacent to any of the rights of way and lands, as required by the Secretary of the Interior or the Secretary of Agriculture." Id.  The term "rights of way" refers to those granted by the Act.  The term "lands" refers to lands outside of the rights of way designated by the Secretaries.  The Act does not refer to rights of way or lands that are off the Forest or Park.  In addition, the United States does not point to any regulation by either Secretary that purports to regulate San Francisco's activities on any lands, public or private, other than the Stanislaus National Forest and Yosemite National Park.

The Raker Act is much like a contract.  It carefully specifies the obligations of the grantee and the grantor.  All of these mutual obligations occur within identified public lands on the Stanislaus National Forest and Yosemite National Park.  There is no hint or suggestion that conduct by San Francisco occurring off of the identified public property is somehow regulated if it has an adverse affect on timber in the Forest or Park.  Under the United States' expansive reading, were San Francisco to fail to eradicate a tree disease in Golden Gate Park that was eventually transmitted to trees in the Stanislaus Forest, the Raker Act would provide a remedy.  This is not a fair reading of the statutory language.

Because the Raker Act does not cover activities by San Francisco occurring outside of the Stanislaus National Forest and Yosemite National Park, the United States cannot recover for damage to public land allegedly caused by San Francisco's

negligence on private property.  Therefore, the court GRANTS San
Francisco's motion to dismiss the United States' fourth cause of
action.

B. Claims Five and Seven (Federal Land Policy Management Act)[1]

San Francisco argues that the United States' fifth and
seventh claims also should be dismissed because the Pilot Fire
originated on private land.  (Reply at 6.)  San Francisco
correctly contends that 43 U.S.C. §§ 1733(b), 1733(g), and 1765
authorize claims for activities on public lands, not private
land.[2]  (Reply at 6.)

Under 43 U.S.C. section 1733(g), "[t]he use, occupancy, or
development of any portion of the public lands contrary to any
regulation of the Secretary or other responsible authority, or
contrary to any order issued pursuant to any such regulation, is
unlawful and prohibited."  Section 1733(b) authorizes the
Attorney General to institute a civil action for an injunction
"to prevent any person from utilizing public lands in violation
of regulations issued by the Secretary under this Act."  Section
1765 requires that certain conditions be met before the United
States will issue a permit for a right of way across public

---

[1] The United States' fifth and seventh claims contain almost
identical allegations.  The only difference is that the seventh
claim includes a paragraph requesting an injunction under 43
U.S.C. § 1733(b).  (FAC ¶ 31.)

[2] These statutes are provisions of the Federal Land Policy
Management Act ("FLPMA").

1   land.[3]

2       Similar to the Raker Act, these statutory provisions

3   regulate activity on public land, not private land.  Therefore,

4   these provisions provide no authority to the United States to

5   recover damages for injury to public land allegedly caused by San

6   Francisco's negligence on private property or to seek an

7   injunction ordering San Francisco to comply with federal

8

9   _____

10      [3] Section 1765 states:

11      Each right-of-way shall contain--

12      (a) terms and conditions which will (i) carry out the
        purposes of this Act and rules and regulations issued
        thereunder; (ii) minimize damage to scenic and esthetic

13      values and fish and wildlife habitat and otherwise
        protect the environment; (iii) require compliance with

14      applicable air and water quality standards established
        by or pursuant to applicable Federal or State law; and

15      (iv) require compliance with State standards for public
        health and safety, environmental protection, and

16      siting, construction, operation, and maintenance of or
        for rights-of-way for similar purposes if those

17      standards are more stringent than applicable Federal
        standards; and

18
        (b) such terms and conditions as the Secretary

19      concerned deems necessary to (i) protect Federal
        property and economic interests; (ii) manage

20      efficiently the lands which are subject to the
        right-of-way or adjacent thereto and protect the other

21      lawful users of the lands adjacent to or traversed by
        such right-of-way; (iii) protect lives and property;

22      (iv) protect the interests of individuals living in the
        general area traversed by the right-of-way who rely on

23      the fish, wildlife, and other biotic resources of the
        area for subsistence purposes; (v) require location of

24      the right-of-way along a route that will cause least
        damage to the environment, taking into consideration

25      feasibility and other relevant factors; and (vi)
        otherwise protect the public interest in the lands

26      traversed by the right-of-way or adjacent thereto.

regulations on private land.  Accordingly, the court GRANTS San
Francisco's motion to dismiss the United States' fifth and
seventh causes of action.

C. Claim Eight (federal common law)

    San Francisco also moves to dismiss the United States'
eighth claim on the ground that federal common law should not be
created when state law already provides an adequate remedy.
(Mot. at 3-5.)  The United States acknowledges that its eighth
claim is a federal common law claim that is not based on any
federal statute, although it looks to various federal statutes
for guidance.  (Sur-Reply at 8; Opp'n at 9-16.)  Because this
claim is based on federal substantive law, and jurisdiction rests
on 28 U.S.C. § 1345, the Erie doctrine does not apply.  Erie
Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).  See
United States v. California, 655 F.2d 914, 916-17 (9th Cir. 1980)
("California") ("application of state substantive law is not
mandated").  However, where federal common law provides the rule
of decision but there is "no clear federal law to apply, federal
courts have referred to state law to provide the appropriate
rule."  Id. (quoting United States v. Nationwide Mut. Ins. Co.,
499 F.2d 1335, 1356-57 (9th Cir. 1974).

    Here, there is no clear federal law to apply whereas there
is clear state law expressly directed to damages and costs caused
when a fire escapes from private lands.  Cal. Health & Safety
Code sections 13007 (allowing for recovery of damages to property
caused by the fire), 13009 (allowing for recovery of fire

suppression costs), 13009.1 (allowing for recovery of costs for investigating the fire).  In these circumstances, state substantive law governs and provides the content of the federal common law claim.  See California, 655 F.2d at 917-918.  Given that the United States already brings claims under Cal. Health & Safety Code sections 13007, 13009, 13009.1, the federal common law claim is duplicative and will be dismissed.[4]

D. Claims One, Two, Three, and Six (State law claims)

San Francisco argues that the United States' first, second, third, and sixth causes of action are barred by the state statute of limitations.  (Mot. at 5-6.)  Under Cal. Gov. Code section 954.4, "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . ."  If the public agency does not provide a written notice of a decision on the claim, then the suit must be brought within two years of its accrual.  Cal. Gov. Code § 945.6.

The United States alleges that it filed a claim with San Francisco on February 18, 2000 and brought suit on August 22, 2005.  (FAC ¶ 10.)  Because San Francisco did not reject the claim in writing, San Francisco argues that the United States had two years -- until August 23, 2001 -- to bring its claim.  (Mot.

---

[4]  Had the court reached a different conclusion on the viability of the state statutory claim, as discussed in the next section, then the federal common law claim might have been permitted.

1    at 6.)   Therefore, San Francisco asserts that claims one, two,

2    three, and six should be dismissed as untimely. (Id.)

3        The United States responds that its suit is timely because

4    the six year statute of limitations in 28 U.S.C. § 2415(b)

5    applies.  (Opp'n at 4.)   Generally, the United States is not

6    bound by state statutes of limitations.  United States v.

7    Summerlin, 310 U.S. 414, 416 (1940).   However, San Francisco

8    argues that the Summerlin rule does not apply to § 945.6 in light

9    of an exception to Summerlin as explained in United States v.

10   California, 655 F.2d 914 (9th Cir. 1980). (Reply at 3-4.)   The

11   California court held that "a state statute which provides a time

12   limitation as an element of a cause of action or as a condition

13   precedent to liability applies to suits by the United States even

14   if there is an otherwise applicable federal statute of

15   limitations."   655 F.2d at 918 (citing United States v. Hartford

16   Accident and Indem. Co., 460 F.2d 17, 19 (9th Cir. 1972)).

17   However, the California opinion, if still good law, addresses

18   only the initial filing of a fire suppression cost claim as a

19   condition precedent to bringing suit.   In this case, there is no

20   question that the United States made such an initial filing.   The

21   California court was not presented with the issue of whether the

22   two year statute of limitations operated to extinguish a claim or

23   operated as a condition precedent.

24       In Bresson v. C.I.R., 213 F.3d 1173, 1178 (9th Cir. 2000),

25   the Ninth Circuit emphasized the distinction between "claim-

26   *extinguishment* provisions on the one hand, and timing

1  requirements that form *conditions precedent* to the *accrual* of a

2  claim on the other."  Here, under § 945.4 a claim accrues -- "no

3  suit . . . may be brought . . . until" -- when it is presented in

4  writing and deemed denied.  That fully accrued claim is

5  extinguished by operation of § 945.6 if "suit" is not commenced

6  within two years.  None of the statutory language suggests that

7  the two year requirement is a condition precedent to suit rather

8  than a traditional statute of limitations.  Thus, under the

9  reasoning in Bresson, § 945.6, as a "claim-extinguishment"

10 provision, would not apply to a claim by the United States that

11 has previously accrued.  Rather, the rule in Summerlin applies

12 such that the United States had six years to file under the

13 federal statute of limitations.

14      Moreover, the Bresson court also found in the alternative

15 that the decision of the Supreme Court in United States v.

16 California, 507 U.S. 746, 757 (1993), established a new approach

17 to the application of Summerlin that does not rely on whether the

18 state statute of limitations is viewed as a "claim-extinguishment

19 provision" or a "condition precedent" to the claim.  According to

20 Bresson, under the Supreme Court opinion the critical inquiry is

21 two-fold: (1) whether "the right at issue was [] acquired through

22 the operation of any federal law, and (2) [whether] the United

23 States . . . [came] to possess the relevant right by acting in

24 its sovereign capacity."  Bresson, 213 F.3d 1173, 1178 (9th Cir.

25 2000).

26      The issue here is whether the "right" to recover costs and

10

damages was created "through" or "by" a federal statute.   This is a close question.   On the one hand, the United States is proceeding under provisions of state law that gives a public agency the right to collect fire suppression costs and damages in certain circumstances.   The "right" is one created by state law. On the other hand, the United States is acting as the sovereign, as the caretaker of public lands in the National Forest and Park systems.   Its invocation of the state law right is based entirely on its position as the sovereign, with the right and duty to manage and maintain public lands.   <u>See</u> 43 U.S.C. § 1701(a)(8).[5] In this sense, its underlying right to collect money from San Francisco under California Health & Safety Code section 13009 derives from federal law.   Given that the <u>Summerlin</u> rule is the general rule, that the United States complied with all conditions precedent to the accrual of its claim, and that the claim of the United States stems ultimately from its management and ownership of public lands, the court holds that the United States is not subject to the two year California statute of limitations. Accordingly, the court DENIES San Francisco's motion to dismiss the United States' first, second, third, and sixth claims.

III.

---

[5] "[I]t is the policy of the United States that the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use."

1       For the reasons stated above, the court: (1) GRANTS San

2   Francisco's motion to dismiss the United States' fourth claim;

3   (2) GRANTS San Francisco's motion to dismiss the United States'

4   fifth and seventh claims; (3) GRANTS San Francisco's motion to

5   dismiss the United States' eighth claim; and (4) DENIES San

6   Francisco's motion to dismiss the United States' first, second,

7   third, and sixth claims.

8       IT IS SO ORDERED.

9   Dated: 8/8/2006

10

11

12

13                                  DAVID F. LEVI
                                    United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26